# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:06cv90

| | |
|---|---|
| SABRINA LOCKHART, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>_____ ) | MEMORANDUM<br>OF DECISION |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

## FINDINGS AND CONCLUSIONS

### I.   Administrative History

Plaintiff filed an application for Supplemental Security Income on February 3, 2003, alleging disability since October 4, 2000, the date on which she had an accident while on a 4-wheeler. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the

Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Standard for Evaluating Allegations of Pain and Other Subjective Complaints

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other

subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336.

A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1] Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

3

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

## V. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

> c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
>
> e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

**C.     The Administrative Decision**

At the first step of the sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. A.R., at 18 & 27. At step two, the ALJ determined that plaintiff had severe impairments of low back pain, headaches, anxiety disorder, mood disorder, a history of a right elbow fracture, and a history of polysubstance abuse and dependence with ongoing marijuana use. Id. At step three, the ALJ found that these impairments did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R., at 19 & 28. At step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") to determine whether she could perform her past relevant work, which was as a housekeeper and a sock pairer, or other work in the national economy. See 20 C.F.R. § 416.920(e)-(g).

The ALJ found that Plaintiff could not perform work on a sustained basis when she was abusing drugs. A.R., at 25 & 28. The ALJ determined, however, that if Plaintiff remained abstinent from addictive drugs, she retained the RFC to perform the exertional demands of medium work, with less than frequent handling and fingering with the right upper extremity, no more than occasional overhead reaching and pushing/pulling with the right upper extremity, and no more than occasional balancing. Id. The ALJ also found that plaintiff should avoid exposure to dangerous machinery and unprotected heights. Id. Additionally, the ALJ determined that plaintiff had limited ability to deal with the public, would be unable to work at a production rate involving piece work, and would be limited to only simple, routine, repetitive tasks. Id.

In assessing the RFC, the ALJ considered all of the relevant evidence, including medical opinions, medical evidence and plaintiff's subjective complaints in a manner consistent with the applicable standards set forth above. Substantial evidence supports her findings. A.R., at 19-25. Based on this RFC determination, the ALJ found that plaintiff could not perform her past relevant work, but could perform a significant number of jobs in the economy. A.R., at 27 & 28.

### D. Discussion

#### 1. Plaintiff's Assignment of Error

Plaintiff has made the following assignment of error: The ALJ erred in her Evaluation of Plaintiff's Mental Impairment. Plaintiff's assignment of error will be discussed *infra*.

## 2. Plaintiff's Assignment of Error

Plaintiff argues that the medical evidence of record includes the results of a consultative examination ordered by the State agency to evaluate plaintiff's mental impairments. Specifically, plaintiff points to the opinions of Elizabeth A. Lane, M.A., who evaluated plaintiff on March 14, 2003, and opined that plaintiff's impairments include Posttraumatic Stress Disorder (hereinafter "PTSD"). A.R., at 219-27. Plaintiff notes that while the ALJ summarized the opinion expressed by Ms. Lane in her report, she failed to provide sufficient rationale for rejecting plaintiff's severe limitations due to PSD. In assigning error to the ALJ's evaluation, plaintiff is arguing that the ALJ's RFC determination was improperly reached

The court has closely read Ms. Lane's report as well as the ALJ's evaluation of the evidence, and it appears that not only did the ALJ properly consider and discuss Ms. Lane's report at length, A.R., at 21-22, she also considered the underlying trauma which upon which Ms. Lane's finding of PTSD is apparently based.

In March 2003, Ms. Lane performed a psychological evaluation of plaintiff and diagnosed her with posttraumatic stress disorder. A.R., at 219-227. Ms. Lane concluded that plaintiff had mild memory problems and mild to moderate concentration problems, and could satisfactorily perform a repetitive, simplistic, day-to-day work routine with work related tasks. A.R., at 226. Ms. Lane further opined that socially and emotionally plaintiff would experience severe difficulty satisfactorily adjusting to a work environment and schedule, tolerating work stressors

7

and demands, and relating to co-workers and supervisors. A.R., at 226. Ms. Lane did not have a treating relationship with plaintiff as she only examined plaintiff in one consultative examination. While even a consultative visit and resulting opinion merits consideration, the ALJ need only accept them to the extent that they are supported by the medical and other evidence of record. 20 C.F.R. § 416.927(c)(2).

A review of the ALJ's decision shows that she evaluated the entire record, specifically cited to evidence which supported her RFC finding, and discussed substantial evidence that was inconsistent with Ms. Lane's opinions. A.R., at 19-26. As to Ms. Lane's finding that plaintiff suffered from severe social and emotional limitations, there is substantial evidence in the record that is inconsistent with such finding including plaintiff's treatment records and evidence from her treating physician. In 2001, Plaintiff was diagnosed with substance induced mood disorder A.R., at 170 & 179, and was encouraged to participate in substance abuse treatment A.R., at 186, but, as the ALJ discussed, A.R., at 24, plaintiff often failed to show up for mental health appointments or continue treatment. A.R., at 165-198.

Thus, Ms. Lane's opinion that plaintiff had severe mental limitations must be considered in light of the fact that plaintiff did not attend mental health treatment. In Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the

burden to establish it by substantial evidence should also be on the Secretary.

Id., at 990. The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's implicit finding that some of the plaintiff's symptoms of Ms. Lane's opinions could not be considered because plaintiff failed to follow prescribed treatment which could have alleviated them. The Social Security Regulations provide

> In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a)-(b). The regulations list the following "good reason[s] for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. 404.1530(c).

Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail. It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff is alleging in this appeal. The ruling explains:

> The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim may be allowed when such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5. In Gordon v. Schweiker, 725 F.2d 231, 237, (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her financial circumstances before a plaintiff can show good cause for failing to comply with prescribed treatment. Id. Clearly, the burden of production is the Commissioner's with respect to the issue of failing to follow prescribed treatment. See Preston v. Heckler, supra, at 990. This burden has been met with the extensive evidence that the plaintiff did not consistently attend prescribed counseling. The plaintiff did not, however, satisfy the burden of providing evidence to meet the requirements of "good cause" for failing to follow treatment due to plaintiff's financial condition. See Gordon, supra, at 237.

The ALJ also considered that the only mental health treatment or medication that Plaintiff received was from her primary care physician, Dr. Steven Merrill. A.R., at 24. Significantly, Dr. Merrill never opined that plaintiff experienced severe

functional limitations due to mental impairments A.R., at 268-315, 333-348, and only once imposed physical limitations when he opined that plaintiff could perform only light duty work for two weeks due to a low back strain. A.R., at 310).

The undersigned cannot, therefore, assign any error to the ALJ's failure to follow Ms. Lane's opinions, as they are not supported by plaintiff's treatment records. Further, Ms. Lane's opinions are also inconsistent with the opinions of another examining psychological consultant, Michelle Coates, M.A. On October 15, 2003, six months after Ms. Lane's examination, Ms. Coates performed a psychological evaluation on Plaintiff and opined that plaintiff could successfully adjust to a work environment and schedule, and that she experienced only mild depression and mild to moderate anxiety. A.R., at 324-327). Ms. Coates opined that plaintiff would relate well to co-workers and to the public and could tolerate work stressors. A.R., at 327.

Ms. Coates also considered plaintiff's issues concerning substance abuse. Ms. Coates noted that plaintiff's marijuana use contributed to a recent hospitalization. While Ms. Coates was aware of plaintiff's use of marijuana, A.R., at 325-327, plaintiff told *Ms. Lane* that she had only occasionally used substances in the past. A.R., at 223-24. Clearly, such gross under reporting of her abuse of controlled substances undermined the efficacy of Ms. Lane's opinion. he ALJ appropriately recognized that Ms. Lane did not have the opportunity to consider plaintiff's condition fully as plaintiff was not forthright about her addiction to prescription medication and her history use of unlawfully controlled substances, which included

cocaine, methamphetamine, marijuana, vicodin, as well as other opiates. A.R., at 21-22 & 24.

The ALJ reasonably gave significant weight to the findings of the nonexamining state agency psychologists, whose opinions were consistent with those of Ms. Coates and with the record as a whole. A.R., at 24-25. On April 9, 2003, Dr. W. Henry Perkins reviewed the evidence and opined that plaintiff would have mild limitations in activities of daily living, moderate limitations in social functioning and concentration, persistence, and pace, and no episodes of decompensation. A.R., at 233-255. He opined that plaintiff would have some impairment in her ability to deal with people and sustain concentration, but could perform simple, routine, repetitive tasks in a low stress setting without public contact. A.R., at 251. On November 21, 2003, Dr. Robert Johnson reviewed the entire record and affirmed Dr. Perkins's opinion. A.R., at 253-55. These findings are consistent with the ALJ's determination that plaintiff would be limited to simple, routine, repetitive tasks, could not work at a production pace, and had limited ability to deal with the public. A.R., at 25. Thus, substantial evidence supports such finding.

Because Ms. Lane's opinion preceded the state agency review, the state agency psychologists had the opportunity to review Ms. Lane's evaluation along with other significant evidence of record prior to forming their opinions. A.R., at 233-255, 253-255. Nonexamining state agency medical sources are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Social Security Act. 20 C.F.R. § 416.927(f); SSR 96-6P. Thus, the opinions of

nonexamining state agency medical sources must be considered by the ALJ, insofar as they are supported by evidence in the case record. Id. The opinion of a nonexamining physician can constitute substantial evidence in support of the ALJ's decision when it is consistent with the record. Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

While the ALJ did not specifically state that she declined to accept Ms. Lane's conclusions, her rejection of such report is apparent from the text of the ALJ's decision. While it certainly would have been a better practice to specifically discuss Ms. Lane's report and decline to follow it, the court cannot find that such error would require remand for consideration of such report as prayed for by plaintiff. As discussed *supra*, such report is inconsistent with substantial evidence of record and does not appear to be based on a complete review of plaintiff's medical records and is in fact based on information that is simply not true. Ms. Lane's opinions that plaintiff had severe social and emotional limitations are simply not persuasive in light of the many opinions the ALJ highlighted which set forth only mild to moderate limitations. Even if Ms. Lane had been a treating physician, which is physician who has observed the plaintiff's condition over a prolonged period of time, Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983), even the opinion of a treating physician is entitled to controlling weight only where it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the

13

amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.)

The crux of plaintiff's argument is, however, that the ALJ failed to specifically reject Ms. Lane's opinion. The court can find no "specific rejection requirement" in reported case law. Generally, failure by the Commissioner to *consider* an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). In this case, as discussed at length above, the ALJ fully considered Ms. Lane's report, but clearly relied on other evidence which she found to be more persuasive. Finding that the evidence relied on by the ALJ is substantial evidence that supports her ultimate conclusion, the court can find no merit to plaintiff's assignment of error.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned must deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, affirm the decision of the Commissioner be affirmed. Such decision is reflected in a Judgment filed simultaneously herewith.

Signed: April 7, 2007

Dennis L. Howell
United States Magistrate Judge